IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA STEINHOFF,<br>            Plaintiff,<br><br>            v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>            Defendant. | )<br>)<br>)<br>) 1:14-cv-287-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER OF COURT**

June 10, 2015

**I.   Introduction**

Plaintiff, Amanda Steinhoff, brought this action pursuant to 42 U.S.C. § 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which denied her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381-1383(f). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 8, 10), which have been fully briefed (ECF Nos. 9, 11), and are ripe for disposition. For the following reasons, Plaintiff's motion will be **GRANTED IN PART**, and the Commissioner's motion will be **DENIED**.

**II.   Background**

    **A.   Factual Background**[1]

Plaintiff was born on May 7, 1987, and was twenty-five-years-old at the time of her hearing. (Tr. 61). Plaintiff has never engaged in substantial gainful work activity, allegedly due in part to grand mal seizures, depression, anxiety, migraines, and stomach problems. (Tr. 44).

---
1. The Court has included only those facts that are pertinent to its decision.

1

Plaintiff also alleges multiple mental impairments, including a severe language-based learning disability. (ECF No. 9). While in the third grade, Plaintiff's Stanford Achievement Test results indicated that Plaintiff was in the twenty-third percentile for reading, and the nineteenth percentile for math. (Tr. 327). The results of a childhood IQ test that Plaintiff took at age nine, while in the fourth grade, indicated that she had a Verbal IQ of 93, a Performance IQ of 94, and a Full Scale IQ of 93. *Id.* A report from Plaintiff's elementary school's psychologist reflected that Plaintiff displayed "significant weaknesses [. . .] in the areas of written expression and organizational skills." (Tr. 328). Thereafter, Plaintiff enrolled in a learning support curriculum, and remained in the program for the duration of elementary school. (Tr. 291).

Plaintiff continued enrollment in the learning support curriculum for assistance in the language-arts throughout her high school career. (Tr. 262, 275). By her senior year of high school, Plaintiff received special education support for three-and-one-half (3.5) hours per week, and spent less than twenty-one percent (21%) of her time outside of the regular education classroom. (Tr. 275). While enrolled in this curriculum, Plaintiff had access to special accommodations. (Tr. 262-291). Plaintiff received teachers' notes, (Tr. 278), she was accompanied by a designated "note-taking buddy," and used a word processor for extended written assignments. (Tr. 278). In addition, Plaintiff had special test-taking privileges, including having tests read aloud, (Tr. 291), and having extended time to complete exams. (Tr. 278).

Also, Plaintiff had similar special accommodations for her Pennsylvania System of School Assessment (PSSA) exams, which she took in her junior year of high school. (Tr. 283). The results of these exams indicate that Plaintiff's performance was "below basic," reflecting "little understanding and minimal display of the skills included in Pennsylvania's Academic Content Standards." (Tr. 330).

2

Grade equivalency tests taken during Plaintiff's junior and senior years of high school demonstrate that Plaintiff recognized and spelled words at a third-grade level, but that she exhibited reading comprehension skills at the ninth grade level and applied "math concepts" at her actual grade level. (Tr. 268, 277).

Reports documenting Plaintiff's success in her learning support curriculum indicate that she had "excellent" grades. (Tr. 267). Plaintiff's report cards indicate that she had below average, average, and above average grades throughout her high school education. (Tr. 256, 258). These reports also demonstrate that, despite her assistance, Plaintiff is "not able to keep pace with her non-disabled peers in lengthy written assignments." (Tr. 268). Plaintiff graduated from high school in 2005, at eighteen years of age, upon completion of "a combination of school district requirements and IEP [Individualized Education Program] goals and objectives." (Tr. 262, 269). Plaintiff later obtained an associate's degree from a "special education" technical college, having completed a dental lab technician program. (Tr. 43).

### B. Medical Records Regarding Plaintiff's Mental Limitations

Medical records also reference Plaintiff's learning disability. In an examination conducted on December 7, 2011, Dr. Asha Prabhu, M.D., a psychologist who evaluated Plaintiff, concluded, *inter alia*, that her abstract thinking was intact and her intelligence was average based on verbal skills. (Tr. 409). Plaintiff presented with a Global Assessment of Functioning (GAF) score of 55 to 60.

Dr. Arlene Rattan, Ph.D., conducted a mental residual functional capacity ("MRFC") assessment of Plaintiff on December 23, 2011. (Tr. 71). Dr. Rattan concluded that Plaintiff had understanding and memory limitations, including moderate limitations in her ability to understand and remember detailed instructions. (Tr. 69). As a result, Dr. Rattan opined that

3

Plaintiff could "perform simple, routine, repetitive work in a stable environment." (Tr. 70). Moreover, Dr. Rattan found that Plaintiff had moderate limitations in sustained concentration and persistence, amounting to limitations in the ability to carry out detailed instructions, to maintain attention for extended periods, and to perform activities within a schedule. *Id.* Dr. Rattan also found that Plaintiff had moderate limitations in social interactions, including her ability to interact with the public, her ability to accept criticism, and her ability to respond appropriately to supervisors. (Tr. 70-71). In summary, Dr. Rattan concluded that Plaintiff could "meet the basic mental demands of competitive work" despite her limitations. *Id.*

A treatment summary provided on November 6, 2012 by Jon Burdick, Plaintiff's outpatient therapist, indicates that she "presented with a high degree of intelligence with regard to her learning disability," but that she otherwise reported "learning difficulties" and had been noted to have "particular difficulty" with some projects assigned to her between sessions. (Tr. 480). Moreover, Mr. Burdick noted that Plaintiff "demonstrate[d] good comprehension," provided someone assisted her in her task. *Id.*

### C. The Administrative Hearing

Plaintiff filed an application for Title XVI supplemental security income on October 25, 2011, in which she alleged disability as of July 1, 1995 due to staring spells, migraines, obesity, anxiety, depression, and a learning disability. (Tr. 20, 22). Her claim was denied on January 11, 2012. Thereafter, Plaintiff requested a hearing, which was conducted via video conference on December 27, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 20). Plaintiff was represented by counsel and testified at the hearing, as did her mother and an impartial vocational expert. (Tr. 38-60).

At the hearing, the ALJ questioned Plaintiff to determine whether she could perform other work, as provided in Step Five of the sequential analysis. (Tr. 56). In evaluating her level of education, the ALJ relied on Plaintiff's testimony that she had "more than a high school education." (Tr. 43, 56). That exchange included the following:

> Q: According to my records, you're presently 25 years of age; you were born May 7th, 1987; and you have more than a high school education. Is that correct?
> A: Correct.
> Q: You went to college for a while; is that right?
> A: I went to a special education college.
> Q: Okay. And did you complete that program?
> A: Yes.
> Q: And did you end up with a degree?
> A: Associate's, I think it was.
> Q: Okay. Associate's degree in what?
> A: Dental lab technician, making teeth.

(Tr. 43). The ALJ also received testimony regarding Plaintiff's daily living, physical and mental ailments, including obesity, staring spells, memory lapses, anxiety, and depression. (Tr. 42-55). Plaintiff's learning disability was not addressed during the administrative hearing. (Tr. 38-60). Having determined Plaintiff's level of education, age, prior work history, and residual functional capacity ("RFC"), the ALJ posed a hypothetical question to the vocational expert, asking whether there were jobs in the national economy able to be performed by:

> [A]n individual 25 years of age; somewhat more than a high school education [. . .]. Let's assume she's limited to light work. [. . .].
>
> Let's assume further that she's limited to simple and repetitive tasks involving routine work processes and setting, not involving high stress—high stress being defined as high quotas and close attention to quality production standards [. . .].

(Tr. 56). In response to this hypothetical, the vocational expert proffered three jobs that would meet the hypothetical claimant's limitations: "billing and posting clerk," [2] "credit checker,"[3] and

---

2. "Billing and posting clerk" is more appropriately labelled "Billing Clerk," DICOT No. 214.362-042 (G.P.O.), 1991 WL 671876. An individual in this position must display a Language Level of 3, which is the ability to "[r]ead a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance

5

"order clerk."[4] (Tr. 57). The vocational expert affirmed that his testimony was consistent with the information contained within the Dictionary of Occupational Titles and other relevant vocational sources. (Tr. 59).

On March 18, 2013, the ALJ rendered an unfavorable decision to Plaintiff, finding that she was not disabled since October 25, 2011, the date the application was filed. (Tr. 31). The ALJ's decision became the final decision of the Commissioner on September 17, 2014, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. (Tr. 1-4).

### D. The Opinion of the ALJ

In his opinion, the ALJ concluded that Plaintiff was affected by several severe impairments, including staring spells, migraines, obesity, anxiety, depression, and a learning disability. (Tr. 22). However, the ALJ provided no explanation regarding his findings on the extent of Plaintiff's learning disability at Step Two. (Tr. 22-24). At Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except, in relevant part, that: "[Plaintiff] is limited to simple and repetitive tasks involving routine work processes and settings, not involving high stress, high stress defined as high quotas or close attention to quality production standards [. . .] ." (Tr. 25). In explaining his consideration of Plaintiff's learning disability in his assessment of her RFC, the ALJ indicated that, though school records demonstrated that Plaintiff had "a history of a learning disability and received

---

of shop tools and equipment, and methods and procedures in mechanical drawing and layout work." *Id.* Further, this position requires writing skills that allow a person to "write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech." *Id.*

3. "Credit Checker" is more appropriately labelled "Credit Clerk," DICOT No. 205.367-022 (G.P.O.), 1991 WL 671717. An individual in this position must display at least a Language Level of 4, which is the ability to "[r]ead novels, poems, newspapers, periodicals, journals, manuals, dictionaries, thesauruses, and encyclopedias." *Id.* Moreover, this position requires writing skills that allow an individual to "prepare business letters, expositions, summaries, and reports using prescribed format and conforming to all rules of punctuation, grammar, diction, and style." *Id.*

4. *See* "Order Clerk," DICOT No. 249.362-026 (G.P.O), 1991 WL 672320. An individual in this position must also display a Language Level of 3. *See supra* n.2

learning support in school," she graduated high school with "average and even above average grades." (Tr. 28). The ALJ also considered Plaintiff's history of seizures, migraines, height, weight, anxiety, depression, and daily activities in assessing her RFC. (Tr. 26-29).

On November 18, 2014, Plaintiff filed her complaint in this Court, in which she seeks judicial review of the decision of the ALJ. The parties' cross-motions for summary judgment followed.

### III. Legal Analysis

#### A. Standard of Review

To qualify for disability under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-9 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423(d)(1). This evaluation requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or exceeds the requirements of a listed impairment, (4) has the ability to return to his or her past relevant work, or, (5) if not, whether he or she can perform other work. *See* 20 C.F.R. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

If a claimant is unable to resume previous employment, the burden shifts to the Commissioner to prove that, given the claimant's residual functional capacity, age, education, and work experience, she can still perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *see also Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). "The Commissioner uses the RFC assessment, [20 C.F.R.] §

404.1520(e), and the testimony of vocational experts and specialists, *Id*. § 404.1566(e); 416.966(e), to make this determination." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Id.* (quoting *Provenzano v. Comm'r*, Civil No. 10–4460(JBS), 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g), 1383(c)(3); *Sweeney v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 797, 800 (W.D. Pa. 2012) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). Section 405(g) permits a district court to review the whole record, including the transcripts and records upon which a determination of the Commissioner is based. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106, 107 n.3 (3d Cir. 2011) (citing *Burns*, 312 F. 3d at 118).

Substantial evidence is defined as "'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Id.* (citing *Fargnoli*, 247 F.3d at 38); 42 U.S.C. § 405(g). When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Gamret v. Colvin*, 2014 WL 109089 at *1 (W.D. Pa. Jan. 10, 2014) (citing *Palmer v.*

*Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196-97. Further, even where this court acting *de novo* might have reached a different conclusion, "so long as the agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Albert Einstein Med. Cntr. v. Sebelius*, 566 F. 3d 368, 373 (3d Cir. 2009) (quoting *Monsour Med. Cntr. v. Heckler*, 806 F. 2d 1185, 1191 (3d Cir. 1986)).

**B.     Discussion**

Plaintiff challenges the ALJ's determination that she is not disabled on three grounds: (1) that the ALJ did not adequately consider Plaintiff's language-based learning disability in his assessment of her RFC; (2) that the ALJ mischaracterized the record when he determined that Plaintiff was not a credible witness with respect to the extent of her disabilities; and (3) that the ALJ should not have accepted the vocational expert's testimony that a person with Plaintiff's impairments could perform the jobs identified by the vocational expert. For her part, the Commissioner claims that the ALJ followed the applicable regulations and reasonably determined that Plaintiff was not disabled.

For the reasons that follow, the Court concludes that the ALJ did not give appropriate consideration to Plaintiff's language-based learning disability. This error affected the validity of the hypothetical posed to the vocational expert, and therefore, the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's determination at Step Five of the analysis.

"Hypothetical questions to vocational experts must accurately portray the claimant's impairments and cannot constitute substantial evidence if the question omitted any impairments that are medically established by the evidence on record." *Christie v. Comm'r of Soc. Sec. Admin.*, 489 F. App'x 581, 585 (3d Cir. 2012) (citation omitted); *see Rutherford v. Barnhart*, 399 F.3d 545, 554 (holding hypothetical must contain all of a claimant's "credibly established limitations"); *see also* 20 C.F.R. § 404.1520(a)(4)(v) (noting that, at the fifth and last step, an ALJ considers his or her assessment of the claimant's attributes and limitations, including their residual functional capacity, age, education, and work experience). Moreover, in *Rutherford v. Barnhart*, the United States Court of Appeals for the Third Circuit explained that:

> A claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert.

399 F.3d at 554 n.8. As the *Rutherford* Court also explained, "[b]ecause of this, objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Id.*, at 554 n.8.

The assessment of a claimant's RFC includes an examination of all of the relevant evidence, including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." 20 C.F.R. § 404.1545(a). However, "the ALJ [. . .] must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In making credibility determinations regarding a claimant's allegations of his or her limitations, an ALJ must follow all of the regulations and "guidelines as to when a limitation is

credibly established." *Rutherford*, 399 F.3d at 554. As the *Rutherford* Court noted, "limitations that are asserted by the claimant but that lack objective medical support may be nonetheless credible." *Id.* Moreover, in all cases, "the ALJ can choose to credit portions of the existing evidence, *but 'cannot reject evidence for no reason or for the wrong reason.'" Id.* (emphasis added) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). In this respect, *Rutherford* follows what has long been the rule in the Third Circuit: that an ALJ must support his or her conclusions regarding a claimant's attributes and limitations with a "clear and satisfactory explanation of the basis on which it rests," which is "as comprehensive and analytical as possible."[5] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *see also Burnett*, 220 F.3d at 121 ("[The ALJ] must give some indication of the evidence which he rejects and his reasons for discounting such evidence").

In addition, the language of a hypothetical posed to the vocational expert, which includes a claimant's RFC, must also be specific enough to convey all of a claimant's credibly established limitations. *See Ramirez v. Barnhart*, 372 F.3d 546, 553 (3d Cir. 2004) (remanding where an ALJ limited claimant to "one to two step tasks" because language did not capture the frequency of claimant's problems with concentration and pace). To this end, our court of appeals has found that limiting a claimant to "simple, repetitive, one, two-step tasks" or similar language may not

---

5. In addition to ensuring the thoughtfulness and thoroughness of his or her decision, the requirement that an ALJ fully explain his or her conclusions serves a practical purpose for the reviewing court. As the *Cotter* Court explained:

> We interpret our [. . .] holding in light of our statutory function of judicial review. In this regard we need from the ALJ not only an expression of the evidence s/he considered which supports the result, but some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

642 F.2d at 705. An ALJ's failure to fully elucidate their conclusions defeats the purpose of this statutory function and, in some cases, warrants remand. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001) (finding ALJ's failure to "make specific findings" with respect to relevant evidence, including its credibility and weight, warranted remand).

11

be sufficiently specific to communicate the particularities of a claimant's intellectual deficiencies to a vocational expert. *Burns*, 312 F.3d at 123. Indeed, in *Burns*, the Court of Appeals found that this phrase was too vague because it could "refer to a host of physical and mental limitations" and would not capture the nuances of the claimant's limitations that were established in the record. *Id.* The Court of Appeals further stated that though "the phrase could encompass a lack of intelligence, it does not necessarily incorporate all of the borderline aspects of [a claimant's] intellectual functioning [. . .]." *Id.*

Where, unlike here, an ALJ has accounted for the more nuanced aspects of or limitations stemming from a learning disability, he or she used more specific language. *See Bryan v. Colvin*, No. EDCV 13-00857 AJW, 2014 WL 1831016, at *1 (C. D. Cal. May 7, 2014) ("no reading, writing, or mathematics above the second-grade level"); *Mohessen v. Comm'r of Soc. Sec.*, No. 12-14501, 2013 WL 6094728, at *8 (E. D. Mich. Nov. 20, 2013) (limiting claimant to "unskilled work that can be learned through visual demonstration"); *Camarillo v. Colvin*, No. 8-12-CV-355-T-33TBM, 2013 WL 4789244, at *5 (M. D. Fla. Sept. 9, 2013) ("main component of jobs must not require reading or writing beyond the sixth grade level"); *Dittman v. Astrue*, No. CIV.A. 07-1652, 2008 WL 472214, at *1 (W. D. Pa. Oct. 23, 2008) ("routine work setting with routine work processes, only simple reading and writing requirements"). But in this case, the ALJ has missed the mark.

Here, the Court concludes that the ALJ improperly discounted the severity of the limitations that stemmed from Plaintiff's language-based learning disability in his assessment of her RFC. Despite concluding in Step Two that Plaintiff had a "severe [. . .] learning disability," and having acknowledged the school records that reflected Plaintiff had a learning disability for which she enrolled in special education, the ALJ did not account for these facts on the basis of

Plaintiff's graduation from high school with "average and even above average grades." This explanation fails indicate that the ALJ considered any of the evidence in the record which showed that Plaintiff's learning disability primarily affects her abilities in the language-arts.

Indeed, the record reflects more than merely Plaintiff's graduation and final grades. The same education reports cited by the ALJ indicate that Plaintiff has not been able to keep pace with her peers in reading and writing since at least the third grade. (Tr. 268, 328). The record also reflects that Plaintiff was enrolled in learning support curriculum specifically for the language arts. (Tr. 264, 267). To assist in her studies, Plaintiff received teachers' notes, (Tr. 278), was accompanied by a designated "note-taking buddy," and had special test-taking privileges, which included having tests read aloud, use of a word processor for extended written assignments, (Tr. 278), and having received extended time to complete exams. (Tr. 278). Despite these accommodations, Plaintiff's standardized test scores reveal that her performance was "below basic," indicating "little understanding and minimal display of the skills included in Pennsylvania's Academic Content Standards." (Tr. 329). Moreover, grade-equivalency tests taken in Plaintiff's junior and senior years of high school demonstrate that she recognized and spelled words at a third-grade level. (Tr. 268, 277). Importantly, the ALJ did not mention or refer to any of these facts in his opinion. To be sure, the ALJ's treatment of Plaintiff's learning disability is far from being "as comprehensive and analytical as possible," and runs afoul of both *Rutherford* and *Cotter*.

The hypothetical of the ALJ to the vocational expert fared no better: it utilized language that is identical in substance to the "simple, repetitive, one-two step tasks" phrasing that our court of appeals has deemed too vague to adequately communicate to the vocational expert a claimant's borderline intellectual functioning. Rather, the inclusion of "simple and repetitive

tasks involving routine work processes and settings" in the hypothetical more accurately encompasses the moderate limitations resulting from Plaintiff's staring spells and memory lapses—as noted in Dr. Rattan's MRFC assessment—but not her language-based learning disability. That the hypothetical did not properly communicate the nuances of Plaintiff's learning disability to the vocational expert is evident considering the jobs that the vocational expert proffered in response: billing clerk, credit checker, and order clerk. Given the information in the record, each of these occupations requires language levels and writing skills that are likely beyond Plaintiff's grasp. The hypothetical question is therefore deficient. Accordingly, the vocational expert's testimony in this regard cannot be considered as substantial evidence. *Christie*, 489 F. App'x at 585; *Rutherford*, 399 F.3d at 554.

### C. Conclusion

Under the Social Security regulations, a district court has three options upon review of a decision of the Commissioner that has denied a claimant's request for benefits. The Court can affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of this Court's objective review of all of the evidence in the record, the Court finds that the ALJ failed to support his decision with substantial evidence and the decision must be remanded to the ALJ for further consideration consistent with this Memorandum Opinion. The Commissioner's decision in the present case may, however, ultimately be correct and nothing stated above should be taken to suggest that the Court has concluded otherwise.

Accordingly, the Court will grant Plaintiffs' motion for summary judgment insofar as it requests a remand for reconsideration and a new hearing; and the Commissioner's motion will be denied. On remand, the ALJ is instructed to consider Plaintiffs' language-based disability in his

RFC assessment and convey same in his hypothetical to the vocational expert. An appropriate Order and Judgment follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA STEINHOFF,<br>         **Plaintiff,**<br><br>         v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>         **Defendant.** | )<br>)<br>)<br>) 1:14-cv-287-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 10th day of June, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the Motion for Summary Judgment (ECF No. 10) filed by Plaintiff Amanda Steinhoff is **GRANTED IN PART**, insofar as it requests a remand; and the Motion for Summary Judgment (ECF No. 8) filed by Carolyn W. Colvin, Acting Commissioner of Social Security, is **DENIED.**

**IT IS FURTHER ORDERED** that the Decision of the Commissioner of the Social Security Administration is hereby **VACATED** and this action is hereby **REMANDED** for reconsideration, rehearing, and/or further administrative proceedings consistent with this opinion. The Clerk shall docket this case **CLOSED**.

                                                                                             BY THE COURT:

                                                                                             s/Terrence F. McVerry<br>
                                                                                             Senior United States District Judge

cc:     Kenneth R. Hiller
         Email: khiller@kennethhiller.com

         Marshall J. Piccinini
         Email: marshall.piccinini@usdoj.gov

         (via CM/ECF)